IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MAXWELL BLACKMON,

    Plaintiff,

v.                                CASE NO. 4:17-cv-108-MW-GRJ

JULIE JONES, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on ECF No. 26, Defendants Julie Jones and Alan McManus' Motion to Dismiss, and ECF No. 33, Plaintiff's Motion to Strike and Answer to Defendants' Motion to Dismiss. The motion to dismiss is therefore ripe for review. For the reasons explained below, Plaintiff's request to strike Defendants' arguments is denied, and it is respectfully recommended that Defendants' motion to dismiss should be granted in part and denied in part.

### I. DEFENDANTS' MOTION TO DISMISS (ECF NO. 26)

#### A. Background

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC") at Wakulla Correctional Institution ("Wakulla CI"),

initiated this case by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff brings claims against five Defendants in their individual capacities:[1] (1) Julie Jones, Secretary of the FDOC; (2) Alan McManus, Bureau Chief of the FDOC; (3) Mr. Scoggins, P.A.; (4) Jason Lash, P.A.; and (5) an unknown x-ray technician. Plaintiff claims Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments.

Specifically, Plaintiff alleges that he fell in his cell and broke his left arm on April 25, 2016. He was in pain and his arm was discolored and swollen. Plaintiff declared a medical emergency the following day. Nurses examined Plaintiff, noted a possible fracture, and notified Defendant Scoggins, who told the nurse to give Plaintiff ibuprofen and send him back to his dorm.

Plaintiff declared another medical emergency later that night due to unbearable pain and a crooked left arm. He was taken to medical but Defendant Scoggins told Plaintiff that he was fine and it was just a little bump. While being escorted back to his cell, a sergeant ordered the

---

[1] Although Plaintiff says in his response to the motion to dismiss that his claims are against Defendants in their official and individual capacities, his Compliant clearly states that the claims are against Defendants in their individual capacities with no mention of their official capacities.

escorting officer to take Plaintiff back to medical. When they returned to medical Defendant Scoggins said Plaintiff's arm did not look like that before, gave Plaintiff a splint and ibuprofen, and ordered x-rays.

According to Plaintiff, the FDOC has a policy of only performing x-rays on inmates at Wakulla CI on Fridays. Accordingly, Plaintiff's x-rays were scheduled for that Friday, April 29, 2016.

The unknown x-ray technician arrived at Wakulla CI to take x-rays of Plaintiff's arm on April 29, 2016, during the 12:00 p.m. count. The x-ray technician refused to wait for count to conclude and left without taking the x-rays of Plaintiff's arm. Plaintiff, therefore, had to wait fourteen days to have the x-rays taken because a new x-ray company was contracted to replace the old company.

Plaintiff's father sent an email regarding Plaintiff's condition to the warden at Wakulla CI on May 7, 2016. The warden responded to the email telling Plaintiff's father that he would look into the issue and update his father by May 11, 2016. By May 12, 2016, however, the warden had not responded, so Plaintiff's mother called Wakulla CI.

Plaintiff then had x-rays taken of his left arm on May 13, 2016. The x-rays confirmed that Plaintiff's left arm had an acute fracture of the ulnar shaft and that the bones were growing back moderately displaced.

Defendant Scoggins noted these findings in Plaintiff's medical file on May 16, 2016. Plaintiff then filed a formal grievance on May 16, 2016.

By May 17, 2016, Plaintiff still had not been seen by medical so Plaintiff's mother called Wakulla CI. A nurse then brought Plaintiff a consultation request to sign.

Plaintiff was transported to Tallahassee Orthopedic Center ("TOC") on May 18, 2016, where Defendant Lash told Plaintiff that because his bones were already growing back he would cast Plaintiff's arm and see how it healed. Plaintiff was to return for a follow-up in three weeks.

Plaintiff's formal grievance was denied on May 24, 2016. Plaintiff therefore filed his appeal to Defendant Jones on May 31, 2016. The Bureau of Inmate Grievances received Plaintiff's appeal on June 13, 2016.

When Plaintiff returned to TOC on June 24, 2016, Defendant Lash told Plaintiff his arm was healing nicely and that he would see Plaintiff again in July. X-rays, however, still showed that his bones were displaced.

Plaintiff returned to TOC on July 14, 2016, for his third set of x-rays. Defendant Lash removed the cast and told Plaintiff he was "good to go," that he would be able to resume his career as a professional golfer, and that Plaintiff could start working out immediately.

Plaintiff continued experiencing constant pain and could not work out.

His father emailed Dr. David Bellamy at TOC about Plaintiff's condition. Plaintiff was then transferred back to TOC to see Dr. Bellamy, who told Plaintiff that his arm looked good but that he was worried about a line in the x-rays. Dr. Bellamy scheduled a follow-up to see Plaintiff in two months.

Plaintiff's father sent Defendant McManus an email on August 18, 2016, regarding Plaintiff's improper medical care. Defendant McManus responded to the email from Plaintiff's father the next morning. Defendant McManus told Plaintiff's father that a full investigation was conducted and finished yesterday, and therefore, that Plaintiff's appeal was completed yesterday at Defendant McManus' request. Plaintiff thereafter received the response to his appeal.

Plaintiff continued complaining of pain but nurses told him there was nothing they could do. Plaintiff eventually saw Dr. Ortiz, who scheduled Plaintiff for more x-rays, which were taken on September 20, 2016. The x-rays revealed that Plaintiff's arm was "incompletely healed." Dr. Ortiz prescribed pain medication for Plaintiff.

Plaintiff returned to TOC on October 5, 2016. Dr. Bellamy confirmed that Plaintiff's arm was not aligned properly.

With respect to Defendant McManus, Plaintiff says Defendant

McManus had the ability to correct the constitutional violation as the official in charge or designated to answer grievances. Plaintiff claims Defendant McManus should have handled the situation sooner and that he acted only when Plaintiff's father emailed him. Plaintiff says Defendant McManus intentionally caused a significant and unnecessary delay in Plaintiff's receipt of proper and timely medical care, which caused Plaintiff's arm to heal incorrectly.

As to Defendant Jones, Plaintiff says the FDOC's policy of only performing x-rays on inmates at Wakulla CI on Fridays causes unnecessary delays in inmates' treatment.

Plaintiff claims he suffered physical injury, pain, suffering, and emotional distress as a result of the constitutional violations. Plaintiff seeks compensatory damages, including lost wages as a professional golfer, punitive damages, and any other relief the Court deems just and proper.

### B.  Standard of Review

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir.1995). As the Supreme Court held in *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."

*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 1951–53 (2009). To escape dismissal, the complaint must allege facts sufficient to move claims "across the line from conceivable to plausible." *Id.* "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' . . . . The complaint's allegations must establish 'more than a sheer possibility that a defendant has acted unlawfully.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

Nevertheless, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Id.* (quoting *Estelle*, 429 U.S. at 106).

## C.  Discussion

Defendants Jones and McManus ("Defendants") argue that Plaintiff's claims against them should be dismissed. (ECF No. 26.) Defendants contend, as an initial matter, that Plaintiff makes no allegations concerning Defendant Jones and the only allegation he makes against Defendant McManus is that Defendant McManus delayed responding to Plaintiff's grievance. Defendants further argue that Plaintiff cannot proceed against them based upon a theory of respondeat superior or vicarious liability. Nevertheless, Defendants also argue that Plaintiff has failed to state an Eighth Amendment claim against them. Finally, Defendants contend that they are entitled to qualified immunity from Plaintiff's claims against them in their individual capacities.

In order to state a cognizable Eighth Amendment deliberate indifference claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. In the Eleventh Circuit, "[d]eliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Franklin*, 738 F.3d at

1250 (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331–32 (11th Cir. 2013)). Demonstrating that a prison official disregarded a serious risk of substantial harm entails a showing of something more than gross negligence, but can be shown by something less than actions undertaken with an intent to cause harm. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Incidents of negligence or medical malpractice, however, do not rise to the level of a constitutional violation. *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991); *Estelle*, 429 U.S. at 105–06 (neither "inadvertent failure to provide adequate medical care" nor "negligen[ce] in diagnosing or treating a medical condition" amounts to deliberate indifference to a serious medical need). Where the inmate has received medical treatment, and the dispute is over the adequacy of the treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments made. *Harris*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1305 (11th Cir. 1989)). A difference in medical opinion as to either an inmate's diagnosis or course of treatment does not rise to the level of cruel and unusual punishment. *Id.* at 1505.

Where the case turns on an alleged delay in providing medical care, rather than the type of medical care provided, courts should consider: (1)

the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (*citing Hill*, 40 F.3d at 1189).

### 1. Defendant Jones

Section 1983 provides an avenue for redress against any person acting under color of state law who subjects a person to the deprivation of any right, privilege, or immunity secured by the Constitution and laws of the United States. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."). "To hold the Secretary liable under § 1983, Plaintiff must show that the FDOC had a custom or policy which was 'the moving force behind the constitutional violation.'" *Horn v. Jones*, No. 14-20341-CIV, 2015 WL 3607012, at *8 (S.D. Fla. May 8, 2015) (quoting *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1171 (11th Cir. 1995)). "[A] longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Vasquez v. City of Miami Beach*, 895 F. Supp. 2d 1275, 1278 (S.D. Fla. 2012) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).

Plaintiff has stated a plausible Eighth Amendment claim against

Defendant Jones. Plaintiff says x-rays at Wakulla CI are only performed once a week pursuant to FDOC policy. Plaintiff alleges that this policy "causes . . . unnecessary delays in an inmate[']s medical treatment . . . ." (ECF No. 1 at 8.) Plaintiff goes on to say that although x-rays were ordered on April 26, 2016, in light of the policy to only perform x-rays on Fridays he was not scheduled to have x-rays taken until April 29, 2016. Then, because the x-rays were not taken on April 29, 2016, Plaintiff had to wait for fourteen additional days while the FDOC transitioned to a new x-ray company. Plaintiff alleges that as a result of this delay his arm started healing incorrectly during that fourteen-day period.

While Plaintiff did not specifically allege that Defendant Jones is liable because she is the final policymaking official of the FDOC as the Secretary, a liberal reading of Plaintiff's allegations discloses that Plaintiff's claim against Defendant Jones is premised upon two theories: (1) the FDOC's policy of only performing x-rays on inmates at Wakulla CI once a week; and (2) the FDOC's decision to transition to a new x-ray company without ensuring that x-rays were performed on inmates during the transition.[2] Plaintiff says this caused an unnecessary delay in his medical

---

[2] *See* ECF No. 11 at 1, n.1 (concluding that the Complaint, which alleges "that the DOC has a policy of providing x-rays to inmates on a limited basis such that Plaintiff's diagnosis and treatment were delayed," were sufficient to alert Defendant Jones of the nature and basis of Plaintiff's claims).

treatment. Plaintiff's case boils down to his assertion that his broken arm healed improperly because he did not receive proper treatment in a timely manner. Defendant Jones could be liable for deliberate indifference to a serious medical need if the FDOC had a policy only to perform x-rays on inmates once per week, and/or the FDOC decided to change x-ray companies without ensuring that inmates had alternative opportunities for x-rays, and that policy/decision was the moving force behind the delay in Plaintiff's treatment.³ The Court, therefore, concludes that at the motion to dismiss stage Plaintiff has stated a plausible deliberate indifference claim against Defendant Jones.

Furthermore, Defendant Jones has failed to demonstrate that she is entitled to qualified immunity at this juncture. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a court must consider two factors: (1) whether the factual allegations show that the officer's conduct violated a

---

³ The Court agrees, however, that Defendant Jones cannot be liable based on a *respondeat superior* or vicarious liability theory.

constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A district court is entitled to exercise its sound discretion in deciding which prong of this inquiry to address first. *Id.* at 236.

Although Defendants contend that they are both entitled to qualified immunity, they advance no qualified immunity argument pertaining to Defendant Jones other than stating "Plaintiff makes no allegations against Defendant Jones or how she may have violated Plaintiff's clearly established constitutional rights." (ECF No. 26 at 14.) The Court disagrees for the reasons discussed above. Because Defendant Jones has failed to explain why she is entitled to qualified immunity she is not entitled to dismissal of Plaintiff's claims against her—at this point—based on the theory of qualified immunity.

### 2. Defendant McManus

The result is different, however, with regard to Plaintiff's claims against Defendant McManus.

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th

Cir. 1994); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. *Hartley*, 193 F.3d at 1269 (citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990)).

It is well settled that a prison official's delay in responding to a grievance does not give rise to a constitutional claim. *See Wildberger v. Bracknell*, 869 F.2d 1467, 1467–68 (11th Cir. 1989) (district court did not err in concluding that the violation of the grievance procedure did not rise to the level of a constitutional violation, because there is no constitutional right to a grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2011) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . . A state created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); *Cranford v. Hammock*, No. 1:09-cv-00070-MP-AK, 2010 WL 916031, at *2 (N.D. Fla. Mar. 11, 2010) (dismissing prisoner's claim premised on prison official's failure to investigate and correct the allegations raised in prisoner's grievances because § 1983 liability "cannot

be predicated upon a claim that the defendant failed to investigate a grievance or respond in a particular manner . . . or failed to process them effectively . . . or failed to process them timely"); *Holmes v. McLaughlin*, No. 5:10-CV-355(CAR), 2010 WL 5559268, at *2 (M.D. Ga. Oct. 14, 2010), *adopted*, 2011 WL 65757 (Jan. 10, 2011) (inmate's claim that warden's failure to respond to his formal grievance within thirty days did not amount to a constitutional violation).

Although Plaintiff alleges in a conclusory manner that Defendant McManus was deliberately indifferent because he contributed to the delay in Plaintiff's medical treatment, Plaintiff's allegations solely relate to Defendant McManus' alleged failure to respond to Plaintiff's appeal in a timely manner. Specifically, Plaintiff says Defendant McManus failed to respond to his appeal within thirty days as required by the Florida Administrative Code. Plaintiff also says Defendant McManus only acted on the appeal when Plaintiff's father emailed Defendant McManus. Plaintiff claims Defendant McManus should have ensured that Plaintiff's appeal was handled in a timely manner. According to Plaintiff, Defendant McManus is therefore responsible for the delay in Plaintiff's medical treatment.

The problem with this claim, however, is that there are no allegations

demonstrating that the appeal or the related investigation had any impact whatsoever on Plaintiff's treatment. Notably, Plaintiff already had been sent to TOC for x-rays and medical attention *before* he even filed his appeal. This is not a situation where he was sent to the hospital only *after* the investigation was performed in conjunction with or as a result of his appeal.

Moreover, there is no suggestion that the outcome of the investigation or appeal somehow altered his treatment such that had the investigation been performed sooner he would have received different medical care or treatment sooner. In essence, the appeal, which Defendant McManus allegedly failed to handle in a timely manner, had no impact on Plaintiff's medical treatment. Thus, even assuming Defendant McManus was responsible for the delay with Plaintiff's appeal, that delay had no causal relationship to Plaintiff's treatment. Plaintiff's claims against Defendant McManus should therefore be dismissed. *See Aiken v. Perry*, No. 5:14-cv-97, 2016 WL 3676629, at *4 n.5 (S.D. Ga. July 6, 2016) (plaintiff's allegation that the warden delayed in responding to his grievances pertaining to medical treatment was insufficient to state a claim against the warden for deliberate indifference to a serious medical need); *Moore v. Allen*, No. CV 311-042, 2011 WL 5149152, at *2 (S.D. Ga. Sept. 28, 2011) (inmate's allegations that warden mishandled grievance relating

to an allegedly improper delay in knee surgery failed to state a § 1983 claim).

## B. MOTION TO STRIKE AND ANSWER TO DEFENDANTS' MOTION TO DISMISS (ECF NO. 33)

Plaintiff requests that the Court strike the arguments set forth in Defendants' motion to dismiss. He proffers no reason for the Court to strike the arguments other than vaguely stating that counsel fails to properly address Plaintiff's factual allegations. This is not a sufficient reason for the Court to strike portions or the entirety of a motion to dismiss. Plaintiff's response is properly construed as a response to Defendants' motion to dismiss, which the Court has taken into consideration. The Court finds no reason to strike anything from the motion to dismiss. Plaintiff's request to strike Defendants' arguments is therefore denied.

## C. CONCLUSION

Accordingly, it is **ORDERED** that:

> Plaintiff's Motion to Strike and Answer to Defendants' Motion to Dismiss, ECF No. 33, is **DENIED** to the extent he seeks to strike Defendants' arguments; and

In light of the foregoing, it is respectfully **RECOMMENDED** that:

> Defendants' Motion to Dismiss, ECF No. 26, should be **GRANTED** as to Defendant McManus and **DENIED** as to

Defendant Jones.

**IN CHAMBERS** at Gainesville, Florida, this 8th day of December 2017.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**