IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MAXWELL BLACKMON,

     Plaintiff,

v.                           CASE NO. 4:17-cv-108-MW-GRJ

JULIE JONES, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on ECF No. 63, Defendant Aaron

Scoggins' Amended Motion to Dismiss or for Summary Judgment, and ECF

No. 69, Defendant Julie Jones' Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff, formerly a prisoner in the custody of the Florida Department

of Corrections (FDOC) at Wakulla Correctional Institution, initiated this case

by filing a *pro se* complaint under 42 U.S.C. § 1983. ECF No. 1. On July

31, 2018, Scoggins filed his Amended Motion to Dismiss or for Summary

Judgment. ECF No. 63. Thereafter, the Court granted Plaintiff's request for

an extension of time to respond to the Motion, giving Plaintiff until October

29, 2018, to respond.[1] ECF No. 77. When October 29, 2018, passed without Plaintiff filing a response, the Court entered an order requiring Plaintiff to show cause by November 20, 2018, as to why Scoggins' Amended Motion to Dismiss or for Summary Judgment should not be granted. ECF No. 81.

On September 10, 2018, Defendant Jones filed her Motion for Summary Judgment. ECF No. 69. Thereafter, the Court sent Plaintiff a notice, requiring him to file a response on or before October 1, 2018. ECF No. 70. The Court granted in part Plaintiff's request for an extension of time to respond to the Motion, giving him until November 1, 2018, to file a response. ECF No. 79. November 1, 2018, passed without Plaintiff filing a response, and on November 9, 2018, the Court entered an order requiring

---

[1] As a result of Scoggins' split representation, on July 9, 2018, Scoggins' counsel filed a Motion to Dismiss for Failure to State a Claim or for Summary Judgment, ECF No. 57, and a Motion to Dismiss for Failure to State a Claim with Prejudice. ECF No. 58. Thereafter, the Court ordered Scoggins to identify which of the two Motions the Court was to rule on. ECF No. 60. On July 31, 2018, Scoggins filed the instant Amended Motion to Dismiss for Failure to State a Claim or for Summary Judgment, ECF No. 63, to which the Court ordered Plaintiff to file a Response. ECF No. 64.

The Court granted Plaintiff's requested extension in part due to the confusion surrounding the two Motions filed by Scoggins. Further, Plaintiff was released from prison on July 27, 2018, four days before Scoggins filed the Amended Motion to Dismiss or for Summary Judgment, and the Court's August 1, 2018 order directing Plaintiff to respond to the Amended Motion by August 30, 2018 was returned to sender. ECF No. 71.

Plaintiff to show cause on or before November 23, 2018, as to why Jones'

Motion for Summary Judgment should not be granted. ECF No. 84.

Thereafter, Plaintiff filed another Motion for Extension of Time. ECF

No. 85. The Court granted Plaintiff a limited extension, requiring that he file

responses to Scoggins' Amended Motion to Dismiss or for Summary

Judgment and Jones' Motion for Summary Judgment on or before

December 7, 2018. ECF No. 87.

The Court admonished Plaintiff that no further extensions of time will

be granted, and if Plaintiff fails to file a timely response to either Motion, the

Motion will be considered unopposed. *Id.* at 4. As of the date of entry of this

Report and Recommendation, Plaintiff has not filed a response to either

Motion.[2] Accordingly, the instant Motions will be treated as unopposed.

Plaintiff's Complaint asserts claims against five Defendants in their

individual capacities:[3] (1) Julie Jones, Secretary of the FDOC; (2) Alan

---

[2] On September 27, 2018, Plaintiff filed a Response to Defendant Scoggins' Motion to Dismiss or for Summary Judgment. ECF No. 72. However, Plaintiff later stated that the September 27 Response he filed was a response to one of the original dispositive motions filed by Scoggins' counsel, not the Amended Motion to Dismiss or for Summary Judgment, and sought an extension of time to file a response to the Amended Motion. ECF No. 75.

[3] Although Plaintiff said in his response to Defendants Julie Jones and Alan McManus' motion to dismiss that his claims are against Defendants in their official and individual capacities, his Complaint clearly states that the claims are against Defendants in their individual capacities with no mention of their official capacities. *See* ECF No. 1 at 1.

McManus, Bureau Chief of the FDOC; (3) Aaron Scoggins, Physician Assistant (P.A.); (4) Jason Lash, P.A.; and (5) an unknown x-ray technician. Defendants Lash, McManus, and the unknown X-ray technician were dismissed from this lawsuit. ECF Nos. 11 & 39.

Plaintiff claims Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments. Specifically, Plaintiff alleges that he fell in his cell at Wakulla CI on April 25, 2016, and broke his left arm. Plaintiff declared a medical emergency the following morning on April 26, 2016, because his arm was discolored and swollen and visited the medical department, where Scoggins worked as a P.A. Nurses who examined Plaintiff believed that Plaintiff's left arm may be broken and planned to give Plaintiff a sling and 200 mg of ibuprofen.

Scoggins, however, refused to examine Plaintiff's left arm at the initial visit and ordered that Plaintiff not be given ibuprofen or a sling and return to his dorm. Later that day, Plaintiff was in excruciating pain, so he declared another medical emergency and returned to the medical department with Officer Moore. Although Officer Moore told Scoggins Plaintiff was in unbearable pain, Scoggins said, "I've already seen you today, you're fine, it's just a little bump" and refused to examine or treat Plaintiff. ECF No. 1 at 6.

After seeing Plaintiff's crooked arm, Sergeant Thomas ordered Officer Moore to take Plaintiff back to medical. When Plaintiff returned to medical a third time, Scoggins remarked, "your arm did not look like this before." *Id.* at 7. At that time, Scoggins examined Plaintiff, gave him a splint and ibuprofen, and ordered x-rays.

Plaintiff alleges the FDOC has a policy of only performing x-rays on inmates at Wakulla CI on Fridays. Accordingly, Plaintiff's x-rays were scheduled for that Friday, April 29, 2016. An x-ray technician arrived at Wakulla CI to take x-rays of Plaintiff's arm on April 29, 2016, during the 12:00 p.m. prisoner "count" but refused to wait for the count to conclude and left without taking the x-rays of Plaintiff's arm.

Plaintiff was not called for an x-ray the following Friday, May 6, 2016. Sergeant Hall told Plaintiff that there was a transition in medical providers at Wakulla CI, and as a result, x-rays would be delayed for a couple of weeks. Plaintiff finally had x-rays taken of his left arm on Friday, May 13, 2016, after his mother and father contacted the prison. The x-rays confirmed that Plaintiff's left arm had an acute fracture of the ulnar shaft and that the bones were growing back moderately displaced.

On May 16, 2016, Scoggins noted his x-ray findings and referred Plaintiff to an orthopedic specialist. Plaintiff was transported to Tallahassee Orthopedic Clinic (TOC) on May 18, 2016, for treatment.

Plaintiff alleges that the delay in receiving an x-ray and proper treatment caused his fracture to heal incorrectly. He claims he suffered physical injury, pain, suffering, and emotional distress as a result of the constitutional violations.

As to Defendant Scoggins, Plaintiff alleges that Scoggins was deliberately indifferent to his serious medical needs by refusing to examine Plaintiff or provide him pain medication or a sling and by waiting four days to refer Plaintiff to TOC after he knew Plaintiff had a broken arm. As to Defendant Jones, Plaintiff alleges that the FDOC's policy of only performing x-rays on inmates at Wakulla CI on Fridays and the FDOC's decision to transition to a new x-ray company without ensuring that x-rays were performed on inmates during the transition caused an unnecessary delay in the diagnosis and treatment of his broken arm.

Plaintiff seeks compensatory damages, including lost wages as a professional golfer, punitive damages, and any other relief the Court deems just and proper.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

The Eleventh Circuit has held that, in the context of an unopposed motion for summary judgment, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (citation omitted). In describing those portions of the record that a court must review, the Eleventh Circuit explained that

> [t]he district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.

*Id.*

## III. SUMMARY JUDGMENT EVIDENCE

In support of his Motion, Scoggins submitted relevant portions of the medical records received from the FDOC regarding Plaintiff. ECF No. 56.[4]

In support of her Motion, Jones submitted the following: Excerpts of Plaintiff's Deposition (ECF No. 69-1); the Declarations of Ronterrious Charleston, Eugene Hall, Tarlos Thomas, and Justin Moore (ECF Nos. 69-2 – 69-5); Plaintiff's Responses to Jones' Request for Interrogatories (ECF No. 69-6); Plaintiff's Responses to Jones' Request for Production (ECF No. 69-7); and Plaintiff's Fact Sheet (ECF No. 69-8).

Plaintiff failed to respond to Defendants' Motions and therefore has not submitted any evidence refuting Defendants' Motions for Summary Judgment. Pursuant to Fed. R. Civ. P. 56(e),

 [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly support or address the fact;

> (2) consider the fact undisputed for purposes of the motion;

> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

---

[4] Although Scoggins' Motion is styled as a Motion to Dismiss or for Summary Judgment, Scoggins asks the Court to treat it as a Motion for Summary Judgment because he relies on medical and grievance records. *See* ECF No. 63 at 4 n.3.

(4) issue any other appropriate order.

The Court may, however, consider Plaintiff's Complaint when ruling on Defendants' motion for summary judgment. 28 U.S.C. § 1746 provides that:

> [w]herever, under any . . . rule, . . . any matter is required or permitted to be supported, evidence, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidence, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . .

Plaintiff's Complaint is signed under penalty of perjury. ECF No. 1 at 16. Thus, the Court can properly treat the Complaint like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). The Court may, therefore, consider Plaintiff's sworn allegations in his Complaint in ruling on the Motions for Summary Judgment.

In the body of his Complaint, Plaintiff refers to various exhibits and states that "exhibits will be produced at the appropriate time." ECF No. 1 at 15. Although the docket reflects that Plaintiff never submitted the

exhibits to the Court, it appears that Plaintiff produced the exhibits to the defendants because both Scoggins and Jones refer to the exhibits in their Motions.[5] To the extent Defendants submitted copies of the exhibits into the summary judgment record before the Court, the exhibits have been considered.

## IV. DISCUSSION

### A. Scoggins is entitled to summary judgment as to Plaintiff's claim of medical deliberate indifference.

Scoggins moves for summary judgment on the grounds that Plaintiff fails to establish a constitutional violation and, further, that Plaintiff can show no injury caused by a delay in treatment that is the fault of Scoggins.

### 1. Deliberate Indifference

In *Estelle v. Gamble*, the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment. 429 U.S. 97 (1976). To establish an Eighth Amendment violation stemming from the deprivation of medical attention, the prisoner must set forth evidence of an

---

[5] *See* ECF No. 63 at 2 ("Blackmon attaches numerous documents to the Complaint, notably some medical records."); *see also* ECF No. 69 at 2 n.1 ("Additionally, in the deposition, counsel refers to several of Plaintiff's exhibits referenced in his complaint as Docket Item 1-1. It appears Plaintiff never filed these items with this Court but did attach them with his notice of intent to sue filed with the Office of Risk Management.")

objectively serious medical need and prove that the officials acted with attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical need," which is one that is so grave that, "if left unattended, pos[es] a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (alterations in original) (internal quotation marks omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Further, a prisoner must demonstrate a "subjective intent to punish," by showing an attitude of "deliberate indifference," which requires showing an "aware[ness] of facts from which the inference could be drawn that a substantial risk of harm exists [ ] and . . . draw[ing of] the inference." *Taylor*, 221 F.3d at 1258 (alteration in original) (quoting *Farmer v. Brennan*, 511

U.S. 825, 837 (1994)). In other words, a prisoner must prove four things: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Id.*

However, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a claim of deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, matters of medical judgment do not constitute deliberate indifference. *Estelle*, 429 U.S. at 107.

### 2. Scoggins' Relevant Summary Judgment Evidence

FDOC medical records show that LPN "C. Ham" assessed Plaintiff at 7:30 a.m. on April 26, 2016, for an injury that occurred the day before on April 25. ECF No. 56-1 at 2. Nurse Ham noted a small abrasion on Plaintiff's left forearm approximately three centimeters wide that was red and swollen, a half-inch "intact" red area on the left shoulder, a two-inch and a five-inch "in-tact" red area near the middle of the back, and another half-inch intact red area on the neck. *Id.*

Nurse Ham further noted in a Fracture/Dislocation/Sprain Protocol form following the examination that Plaintiff's chief medical complaint was

that his left arm may be broken after he slipped coming out of the shower and hit his arm on his bunk. *Id.* at 3. Nurse Ham noted that Plaintiff had pain in his left forearm described as an 8/10. *Id.* She further noted that the skin around the injury site was pink and cool and that Plaintiff was experiencing extremity numbness and tingling. *Id.* She further noted mild swelling and a raised area on the mid forearm with an abrasion but no bleeding. *Id.* She noted that Plaintiff has a possible fracture and/or dislocation. *Id.*

Nurse Ham further noted that she notified Scoggins about Plaintiff's condition, and Scoggins ordered her to give Plaintiff ibuprofen and send him back to his dorm. *Id.* The treatment plan also including applying an ice pack to Plaintiff's arm for fifteen to twenty minutes, and 200 mg of ibuprofen for pain. *Id.* The report reflects that instructions to "apply arm sling" were included but later struck through. *Id.* The report further reflects that Plaintiff was instructed to report any skin discoloration, coolness, tingling numbness or increase in pain immediately. *Id.* at 4.

FDOC medical records further reflect Scoggins examined Plaintiff at approximately 4:00 p.m. on April 26, 2016, that same day. ECF No. 56-1 at 1, 5. Scoggins' assessment was to rule out a fracture to Plaintiff's forearm.

*Id.* Scoggins ordered an x-ray, a splint, and 600 mg of Motrin (a prescription dose) for thirty days. *Id.*

On May 16, 2016, Scoggins noted that an x-ray of Plaintiff's left forearm revealed a moderately displaced fracture at the ulnar shaft. *Id.* at 14. Scoggins referred Plaintiff to an orthopedic specialist for an appointment two days later on May 18, 2016, and ordered an additional thirty days of Plaintiff's prescription for Motrin 600 mg. *Id.* at 5, 14.

Medical records from TOC reflect that Dr. David Bellamy examined Plaintiff on May 18, 2016. *Id.* at 12. Exam notes disclose a closed, displaced transverse fracture of the ulna shaft. *Id.* Dr. Bellamy ordered the application of a long-arm cast and a re-check in three weeks. *Id.* Accordingly, Scoggins scheduled Plaintiff for a follow-up appointment with Dr. Bellamy for June 24, 2016. *Id.* at 11. Exam notes from the follow-up appointment with Dr. Bellamy on June 24, 2016, reflect "routine healing" and show that Dr. Bellamy ordered the application of a short-arm cast. *Id.* at 9.

Records from a follow-up appointment with Scoggins and Dr. Ortiz on November 14, 2016, reflect Plaintiff had an incompletely healed mid-shaft fracture of the left ulnar but that Plaintiff played basketball without difficulty. *Id.* at 8. Scoggins scheduled Plaintiff for another follow-up with Dr. Bellamy

on January 23, 2017. *Id.* At that appointment, Dr. Bellamy noted that

Plaintiff reported he was doing well, however sometimes he has a little bit

of pain at the fracture site. *Id.* at 6. Plaintiff's arm was x-rayed at the visit,

and Dr. Bellamy noted that the fracture was healed and released Plaintiff

from his care. *Id.* at 6-7.

### 3. No constitutional violation

Plaintiff fails to establish Scoggins was deliberately indifferent to his

serious medical needs. The summary judgment evidence reflects that

Plaintiff presented to medical at 7:30 a.m. on April 26, 2016, with a small

abrasion on the left forearm, pain on a scale of 8/10, and numbness and

tingling in Plaintiff's extremities. However, the nurse noted only "mild"

swelling and a raised area on the mid forearm with an abrasion but no

bleeding. The nurse noted that Plaintiff's chief complaint was that his left

arm may be broken and therefore noted that Plaintiff had a possible

fracture and/or dislocation.

After notifying Scoggins of Plaintiff's condition, Scoggins ordered

Plaintiff ibuprofen and instructed him to apply ice to his arm and report back

if his symptoms worsen. Medical records further show that Plaintiff returned

at approximately 4:00 p.m. that afternoon. As reflected in Plaintiff's own

allegations, at that time, Scoggins remarked that Plaintiff's arm "did not look

like this before." Notably, at that time Scoggins gave Plaintiff a splint and ibuprofen and ordered an x-ray.

In his Complaint, Plaintiff alleges Scoggins refused to examine his left arm at the initial visit and ordered that Plaintiff not be given ibuprofen or a sling.[6] Plaintiff further alleges that after he was sent back his dorm, Officer Charleston noticed that Plaintiff's left arm was crooked and was in disbelief that Plaintiff was not given a sling for support. Plaintiff alleges he returned to medical once again with Officer Moore because he was in excruciating pain, and although Officer Moore told Scoggins Plaintiff was in unbearable pain, Scoggins said, "I've already seen you today, you're fine, it's just a little bump" and refused to treat Plaintiff. Plaintiff alleges Sergeant Thomas saw Plaintiff's crooked arm and ordered Officer Moore to take Plaintiff back to medical. It was only when Plaintiff returned to medical a third time that day that Scoggins examined him and gave him a splint and ibuprofen and ordered x-rays.

Even accepting as true Plaintiff's allegations, Plaintiff fails to establish Scoggins was deliberately indifferent to his serious medical needs. Scoggins does not dispute that a broken arm can be a serious and painful

---

[6] Medical records reflect the order for a sling was struck through, but that Plaintiff's treatment plan included 200 mg of ibuprofen.

injury. However, the evidence of Plaintiff's initial condition does not

establish that his broken arm was so known or obvious to Scoggins such

that Scoggins had subjective knowledge of a risk of serious harm but

nevertheless disregard that risk.

Scoggins initially treated Plaintiff with ibuprofen and ice. Scoggins'

failure to recognize Plaintiff's injury as a potential fracture warranting a

splint and x-ray at the initial visit is at most below the standard of care for a

medical professional. However, incidents of negligence or medical

malpractice do not rise to the level of a constitutional violation. *Harris*, 941

F.2d 1495, 1504 (11th Cir. 1991); *Estelle*, 429 U.S. at 105-06 (neither

"inadvertent failure to provide adequate medical care" or "negligen[ce] in

diagnosing or treating a medical condition" amounts to deliberate

indifference to a serious medical need). Where the inmate has received

medical treatment, as is the case here, and the dispute concerns the

adequacy of the treatment, courts should be reluctant to question the

accuracy or appropriateness of the medical judgments made. *Harris*, 941

F.2d at 1507 (quotations omitted).

When Plaintiff returned to  medical that afternoon in worse condition

Scoggins would have had subjective knowledge of a risk of serious harm.

Notably, however, the record demonstrates that at that time Scoggins

treated Plaintiff's injury properly by ordering a splint, pain medicine, and x-rays.

Moreover, by Plaintiff's own assertions, even if Scoggins had ordered an x-ray immediately following the initial examination on the morning of April 26, 2016, the x-ray technician was not scheduled to arrive until Friday, under the alleged x-ray policy. Although Plaintiff was not x-rayed until Friday, May 13, 2016, Plaintiff does not allege that Scoggins was responsible in any way for the x-ray delay. Thus, to the extent Plaintiff asserts his injuries are a result of a delay in the x-ray, Plaintiff has failed to demonstrate Scoggins' conduct caused the injury.

Plaintiff asserts that the x-ray was performed on Friday, May 13, 2016. The record reflects that on Monday, May 16, 2016, Scoggins noted that the x-ray revealed a moderately displaced fracture at the ulnar shaft and ordered Plaintiff a referral to an orthopedic specialist for an appointment two days later on May 18, 2016, as well as an additional thirty days of Plaintiff's prescription for Motrin 600 mg. Although the record does not make clear whether Scoggins received and reviewed the x-ray and therefore knew Plaintiff had a broken arm prior to May 16, 2016, when he noted his findings and ordered a referral to a specialist, there is no

evidence suggesting that the three-day delay in referring Plaintiff to a specialist was due to deliberate indifference.

Finally, the medical evidence reflects that although Scoggins noted that Plaintiff's fracture was "incompletely" healed on November 14, 2016, Dr. Bellamy, the orthopedic specialist, treated Plaintiff's fracture with a cast instead of surgery, and at a January 23, 2017 follow-up appointment, Dr. Bellamy noted that the fracture was healed and released Plaintiff from his care.

Even assuming for purposes of this motion that Plaintiff's arm healed "incompletely," there is no evidence demonstrating that it was due to Scoggins' delay in treating him. Accordingly, even assessing the summary judgment record in the light most favorable to Plaintiff, as the Court is required, Plaintiff has failed to establish a claim for deliberate indifference against Scoggins. Because the evidence does not establish a constitutional violation, Scoggins is entitled to summary judgment.

### B. Jones is entitled to summary judgment as to Plaintiff's claim of medical deliberate indifference.

Jones moves for summary judgment on the following grounds: (1) Plaintiff fails to demonstrate the FDOC had a once-a-week x-ray policy, (2) the evidence does not support Plaintiff's explanation why he did not receive

an x-ray in a timely manner, (3) Plaintiff fails to state an individual Eighth

Amendment claim as to Jones because he fails to demonstrate Jones was

personally involved in acts or omissions that resulted in the constitutional

deprivation, (4) Jones is entitled to qualified immunity as to Plaintiff's

individual capacity claims, and (5) Plaintiff's claims against Jones in her

official capacity are barred by the Eleventh Amendment.

### 1. Supervisory Liability

Section 1983 does not impose liability on a supervisor for the

unconstitutional acts of a subordinate based on theories of *respondeat*

*superior* or vicarious liability. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th

Cir. 2003). A supervisor may be individually liable under § 1983 for a

subordinate's acts only if the supervisor "personally participates" in the

conduct or if "there is a causal connection between the actions of the

supervising official and the alleged constitutional deprivation." *Lloyd v. Van*

*Tassel*, 318 F. App'x 755, 760 (11th Cir. 2009), quoting *Cottone*, 326 F.3d

at 1360. The causal connection may be established (1) when the

supervisor had notice of a history of widespread abuse and the need to

correct the alleged deprivation but failed to do so; (2) when a custom or

policy of the supervisor results in deliberate indifference to constitutional

rights; or (3) when the "facts support an inference that the supervisor

directed the subordinates to act unlawfully or knew that the subordinates

would act unlawfully and failed to stop them from doing so." *Id.*

### 2. Jones' Relevant Summary Judgment Evidence

In support of her Motion for Summary Judgment, Jones submitted

excerpts from Plaintiff's deposition. Plaintiff responded to counsel's

questions regarding Jones' personal involvement in implementing the x-ray

policy as follows:

> Q: . . . So I believe in your complaint, you mentioned that you thought it was FDC policy that, at Wakulla, X-rays were only done on Fridays; is that a fair summation?
>
> A: Correct.
>
> Q: Okay. Is this the only time you actually had an X-ray while you were at Wakulla?
>
> A: Yes.
>
> Q: And is it the only X-ray you've had at FDC?
>
> A: No.
>
> A: I think that was Friday with the new company, the old company was Tech Care that left, and the new company was Schryver, and I think it was still on a Friday.
>
> Q: Okay, and so you've never seen any – anything in writing or, like, posted in medical that only Fridays is –
>
> A: No.
>
> Q: This is based on your conversation with the physician assistant –

A: And the fact that the only time people ever got X-rays is on Fridays.

Q: Okay. And do you know what involvement Secretary Jones had in this, if at all?

A: She had knowledge of what was going on.

Q: And why do you say she had knowledge, are you referring to the – to your grievance?

A: To my grievance, A; and B, she's the policy maker.

Q: Okay. So your – do you have any evidence besides that she's a policy maker, that she was personally aware that at Wakulla –

A: And my grievance, yes my –

Q: Your grievance?

A: -- notified her of it, yes.

Q: Okay. Now, following up kind of in that same vein, your testimony today and then in your complaint – and I believe it was Sergeant Hall you said was the one who told you, "Hey, they're switching the medical providers, it's going to be a couple weeks –

A: Yeah.

Q: -- like a gap in coverage?

A: Yes.

Q: And you said that – like we talked about earlier, that came from Sergeant Hall?

A: Yes.

> Q: Did you talk to anyone else about that? Did you see any other kind of evidence of that or –
>
> A: Yes, I saw the change in medical providers from Corizon to Centurion during that time; I saw the change in X-ray providers from Tech Care to Schryver; I saw other inmates being injured and told there was nothing they – could be done right now because they were in the change of medical providers; I talked to numerous nurses who said we're in the change of medical providers.

Pl.'s Dep., 42:16-25, 44:1-45:23, ECF No. 69-1 at 15-17. Jones further produced Plaintiff's answers to Jones' interrogatories asking Plaintiff to provide evidence of Jones' individual involvement in or knowledge of a policy to x-ray inmates once-a-week or the gap in x-ray coverage, and Plaintiff responded that Jones was liable because she is the Secretary of the FDOC and chief policymaker, responsible for the care, custody, and management of FDOC inmates. *See* ECF No. 69-6 at 3-4.

### 3. *No personal involvement*

Even assuming for purposes of this Motion that there was a once-a-week x-ray policy in place at Wakulla CI or that a gap in x-ray coverage resulted from the transition of medical providers, Plaintiff fails to establish that Jones was personally involved in implementing the policy, or that she was personally involved in switching medical providers without covering the gap in x-ray services during the transition.

Although Plaintiff relies on conclusory allegations of Jones' role as a FDOC policymaker to demonstrate personal involvement, these allegations are insufficient to demonstrate the requisite personal involvement for an individual supervisory liability claim.[7]

Although Plaintiff stated in his deposition that his grievances put Jones on notice of the alleged deliberate indifference, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hendrix v. Tucker*, 533 F. App'x 803, 805 (11th Cir. 2013) (citation omitted) (Administrative grievances and state court litigation insufficient to put supervising officials on notice of alleged deprivations). To the extent Plaintiff relies on grievances to demonstrate Jones' involvement, they are insufficient to support a claim of supervisory liability.

---

[7] Although Plaintiff explicitly asserts claims against Jones in her individual capacity, to the extent Plaintiff brings Eighth Amendment claims for damages against the Secretary in her official capacity as the final FDOC policymaker, his claims are barred by the Eleventh Amendment. A suit against a state official in his official capacity is a suit against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). It is well established that the Eleventh Amendment prohibits a suit against the State absent the State's consent to the suit. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Florida has not waived its sovereign immunity or consented to be sued in damage suits brought under § 1983. See § 768.28(18), Fla. Stat.; *Gamble v. Fla. Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1515 (11th Cir. 1986). Accordingly, Plaintiff's Eighth Amendment claims against the Secretary in her official capacity are barred by the Eleventh Amendment.

Moreover, there is no dispute that Scoggins scheduled Plaintiff for an x-ray on April 29, 2016, three days after Plaintiff visited medical complaining about his arm. Plaintiff alleges he was not x-rayed that day because the x-ray technician did not want to wait for the conclusion of the prisoner "count." Although Jones submitted Officer Charleston's signed Declaration stating that Plaintiff missed the x-ray technician because he refused to leave his elective call-out, even assuming that Plaintiff was scheduled for an x-ray that Friday because of the policy, Plaintiff, by his own allegations, missed the scheduled x-ray due to no fault of Jones. ECF No. 69-2 at 2.

Plaintiff asserts he was not examined the following week on May 6, 2016, due to a gap in x-ray coverage resulting from the Wakulla CI transitioning medical providers. Plaintiff testified at his deposition that he saw the change in x-ray providers, heard about it from nurses, and witnessed other injured inmates being told they would not receive x-rays during the transition. Pl.'s Dep., 45:4-25, ECF No. 69-1 at 17. He further asserts that Officer Hall told him in the presence of Officer Charleston that x-rays would not be performed on May 6, 2016, due to the change in providers, although both Hall and Charleston signed declarations refuting

this allegation. ECF Nos. 69-2 & 69-3.[8] Even accepting Plaintiff's allegations as true, however, there is no evidence suggesting that Jones was aware there would be or ever was a gap in x-ray coverage during the transition and refused to address it.

In sum, there is no evidence to establish that Jones had notice of a history of widespread deliberate indifference based on the x-ray policy and gap in x-ray coverage but failed to correct it, implemented an improper policy resulting in deliberate indifference to Plaintiff's constitutional rights, or that she directed subordinates to act unlawfully. In the absence of a causal connection between the supervisor and the alleged unconstitutional conduct, there is no basis for supervisory liability, and summary judgment should be granted in Jones' favor. *See Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).[9]

---

[8] It appears Plaintiff produced to Defendants declarations prepared by Plaintiff and purportedly signed by Hall and Charleston supporting his allegations. Hall and Charleston submitted signed declarations in which they refute ever signing the declarations prepared by Plaintiff.

[9] Jones also asserts the defense of qualified immunity. To determine whether qualified immunity applies to a government official performing a discretionary function, a court must consider two factors: (1) whether the evidence shows that the official's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A court has the discretion to address the two prongs in either order. *Id.* Because Plaintiff has failed to establish that Jones' conduct constituted a constitutional violation, Jones is entitled to qualified immunity under the first step in the qualified immunity analysis.

## IV.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant Aaron Scoggins' Amended Motion to Dismiss or for Summary

Judgment, ECF No. 63, and Defendant Julie Jones' Motion for Summary

Judgment, ECF No. 69, should be **GRANTED,** judgment as a matter of law

should be entered in favor of Scoggins and Jones, and this case should be

closed.

**IN CHAMBERS** this 17th day of December 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.